In People v. Morton, 148 N. Y. 156, 160, 42 N. E. 538, 539, the re-lator was an orderly and watchman in the capitol at Albany, whom the superintendent of buildings had express authority to discharge as he did; but the court of appeals, in sustaining his exercise of this authority, declared that:

"Even in the absence of such specific power the rule is well settled that the power to appoint to the public service carries with it to the appointing power, in the absence of limiting words, or of a fixed term, the right to remove the appointee at pleasure."

Still more directly in point are the remarks of Rumsey, J., in the recent case of People v. Murray, 2 App. Div. 359, 37 N. Y. Supp. 848, where he speaks as follows concerning the relator, who was an excise inspector in the city of New York:

"It is not seriously contended by the relator but that the position which he occupied was that of a mere employé, and that the power of removal was intrusted to the commissioners, to be used practically at their discretion. This was the opinion of the court of appeals with regard to persons holding the same position, as expressed in the case of Gregory v. Mayor, 113 N. Y. 416, 21 N. E. 119. Occupying, as the relator did, simply the position of an employé, it is well settled that the respondents, to whom was given the right to employ him, had also the right to remove him whenever they saw fit."

I think that the same right of removal accompanies the right to employ a person as keeper of the Queens county almshouse, and that a due regard to the proper exercise of the powers of the county super-intendents of the poor in respect to that position precludes them from making such a contract of employment as that between them and the defendant which is contained in this record. They have no authority thus to fix the duration of a public employment which the law and the legislature have left indefinite,—presumably for some good reason. If such a contract may legally be made, it is not per-ceived why the term of the keeper might not be extended to thirty years as well as three. An extension of this kind, or any limitations by contract upon the power of the county superintendents to freely exer-cise all their official functions with respect to the keeper of the alms-house, would be opposed to public policy, and detrimental to the wel-fare of the community. In my opinion, the superintendents had no right to make the three-years contract in question, and that contract is not binding upon the present superintendents.

The plaintiff should have judgment accordingly.   All concur.

---

(18 App. Div. 205.)

SCHWANZER v. BROOKLYN HEIGHTS R. CO.

(Supreme Court, Appellate Division, Second Department.   June 8, 1897.)

1. PERSONAL INJURIES—CONDITION RESULTING FROM INJURY.
   In an action for personal injuries, it is error to permit the jury to con-sider the testimony of a physician as to the physical condition of plaintiff on the day before the trial, where there was no evidence that such condi-tion did not exist before the accident.

2. SAME—CONDITION BEFORE ACCIDENT—EVIDENCE.
   Evidence that plaintiff was apparently in good health before the accident will not sustain an inference that a rupture disclosed on a physical exam--

ination of plaintiff on the day before the trial did not exist before the accident.

3. SAME—EVIDENCE—POVERTY OF PLAINTIFF.

Evidence that plaintiff had been committed to the almshouse is not admissible in an action for personal injuries.

Appeal from trial term, Kings county.

Action by Henry Schwanzer against the Brooklyn Heights Railroad Company for personal injuries. From a judgment for $1,000 and $190.79 costs, entered on a verdict in favor of plaintiff, and from an order denying a motion for a new trial made on the minutes, defendant appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Thomas S. Moore, for appellant.
Albert A. Wray, for respondent.

WILLARD BARTLETT, J. In this action the plaintiff has recovered a verdict of $1,000 damages for personal injuries suffered in consequence of being knocked down by one of the defendant's trolley cars, on Harrison avenue, in the city of Brooklyn. We are compelled to reverse the judgment entered upon this verdict, and order a new trial, by reason of an error committed by the trial judge in his instructions to the jury in regard to the elements which they could consider in assessing the plaintiff's damages. A physician, who made a physical examination of the plaintiff on the day before the trial, testified that he found him suffering from a hernia or rupture on the left side of his body. There was absolutely no evidence in the case from which it could be inferred that this rupture was caused by the accident which befell the plaintiff when he was knocked down by the defendant's car. The plaintiff did not testify himself, and there was no testimony from any other person showing that the hernia did not exist prior to the accident.

Upon this state of proof, the learned trial judge evidently entertained considerable doubt whether he ought to leave any question concerning the hernia to the jury. In the course of his charge, however, he referred to it in such a way as to convey the idea that its nonexistence before the accident might be inferred from the testimony to the effect that the plaintiff was then apparently in good health. At the close of the charge, he was asked by counsel for the defendant whether he had withdrawn from the consideration of the jury the question of rupture or hernia, to which he responded, "I think that is out of the case, practically." If the matter had rested here, there would have been no reversible error; but subsequently, after some remarks by the counsel for the plaintiff, the learned court, although again declaring that there was not any proof of the absence of hernia before the accident, said: "I will not withdraw it entirely. I will leave it for the jury to consider in the light of all the evidence." The defendant's exception to this statement was well taken. All question concerning the hernia, as an element of damage, should have been withdrawn from the consideration of the jury by the trial judge. In view of what was said on the subject, it can hardly be

doubted that the jury did consider it, and that the recovery in behalf of the plaintiff was thereby increased.

An error was also committed in the course of the trial in admitting testimony, against the objection of the defendant, to the effect that the plaintiff had been committed to the almshouse. We cannot perceive any purpose for which this evidence was introduced except to show that the plaintiff was a poor man, and thus excite sympathy in his behalf, and enhance the amount of damages which should be awarded by the jury. Evidence of this kind is not admissible. The amount of damages recoverable in a negligence suit cannot properly be affected by the poverty of the plaintiff. Shea v. Railroad Co., 44 Cal. 414; Mannion v. Hagan, 9 App. Div. 98, 41 N. Y. Supp. 86. As it turned out that the plaintiff remained in the almshouse only one day, it may be that the error in receiving this testimony could be disregarded, as harmless; but we think best to call attention to it, so that a similar mistake may not be made when the case comes to be tried again.

The judgment must be reversed, and a new trial granted; costs to abide the event. All concur.